THIS LEASE (this "Lease") dated this 18th day of December, 2024

BETWEEN:

Jerry Johnson of 557 Chester St, Lancaster, PA 17602, USA

Telephone: (717) 205-8793

(the "Landlord")

OF THE FIRST PART

- AND -

GEORGIA MAE JOHNSON of 440 South Plum st, Lancaster, PA 17602, USA

Telephone: (717) 205-6682

(the "Tenant")

OF THE SECOND PART

IN CONSIDERATION OF the Landlord leasing certain premises to the Tenant, the Tenant leasing those premises from the Landlord and the mutual benefits and obligations set forth in this Lease, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties to this Lease (the "Parties") agree as follows:

## Definitions

1.   When used in this Lease, the following expressions will have the meanings indicated:

   a.   "Additional Rent" means all amounts payable by the Tenant under this Lease except Base Rent, whether or not specifically designated as Additional Rent elsewhere in this Lease;

   b.   "Building" means all buildings, improvements, equipment, fixtures, property and facilities from time to time located at 509 E Strawberry St, Lancaster, PA 17602, USA, as from time to time altered, expanded or reduced by the Landlord in its sole discretion;

   c.   "Common Areas and Facilities" mean:

i. those portions of the Building areas, buildings, improvements, facilities, utilities, equipment and installations in or forming part of the Building which from time to time are not designated or intended by the Landlord to be leased to tenants of the Building including, without limitation, exterior weather walls, roofs, entrances and exits, parking areas, driveways, loading docks and area, storage, mechanical and electrical rooms, areas above and below leasable premises and not included within leasable premises, security and alarm equipment, grassed and landscaped areas, retaining walls and maintenance, cleaning and operating equipment serving the Building; and

ii. those lands, areas, buildings, improvements, facilities, utilities, equipment and installations which serve or are for the useful benefit of the Building, the tenants of the Building or the Landlord and those having business with them, whether or not located within, adjacent to or near the Building and which are designated from time to time by the Landlord as part of the Common Areas and Facilities;

d. "Leasable Area" means with respect to any rentable premises, the area expressed in square feet of all floor space including floor space of mezzanines, if any, determined, calculated and certified by the Landlord and measured from the exterior face of all exterior walls, doors and windows, including walls, doors and windows separating the rentable premises from enclosed Common Areas and Facilities, if any, and from the center line of all interior walls separating the rentable premises from adjoining rentable premises. There will be no deduction or exclusion for any space occupied by or used for columns, ducts or other structural elements;

e. "Premises" means the restaurant at 509 E Strawberry St, Lancaster, PA 17602, USA;

f. "Proportionate Share" means a fraction, the numerator of which is the Leasable Area of the Premises and the denominator of which is the aggregate of the Leasable Area of all rentable premises in the Building;

g. "Rent" means the total of Base Rent and Additional Rent.

## Leased Premises

2. The Landlord agrees to rent to the Tenant the restaurant municipally described as 509 E Strawberry St, Lancaster, PA 17602, USA (the "Premises").

The Premises will be used for only the following permitted use (the "Permitted Use"): Restaurant /Catering /Event space.

3.  No pets or animals are allowed to be kept in or about the Premises or in any common areas in the Building containing the Premises.

4.  Subject to the provisions of this Lease, the Tenant is entitled to the use of parking (the "Parking") on or about the Premises. Only properly insured motor vehicles may be parked in the Tenant's Parking.

## Term

5.  The term of the Lease is a periodic tenancy commencing at 12:00 noon on February 1, 2025 and continuing on a year-to-year basis until the Landlord or the Tenant terminates the tenancy (the "Term").

6.  Notwithstanding that the Term commences on February 1, 2025, the Tenant is entitled to possession of the Premises at 12:00 noon on January 17, 2025.

7.  Upon 30 days' notice, the Landlord may terminate the tenancy under this Lease if the Tenant has defaulted in the payment of any portion of the Rent when due.

8.  Upon 60 days' notice, the Landlord may terminate the tenancy under this Lease if the Tenant fails to observe, perform and keep each and every of the covenants, agreements, stipulations, obligations, conditions and other provisions of this Lease to be observed, performed and kept by the Tenant and the Tenant persists in such default beyond the said 60 days' notice.

## Rent

9.  Subject to the provisions of this Lease, the Tenant will pay a base rent of $1,800.00, payable per month, for the Premises (the "Base Rent"), without setoff, abatement or deduction. In addition to the Base Rent, the Tenant will pay for any fees or taxes arising from the Tenant's business.

10. The Tenant will pay the Base Rent on or before the fifteenth of each and every month of the Term to the Landlord.

11. No acceptance by the Landlord of any amount less than the full amount owed will be taken to operate as a waiver by the Landlord for the full amount or in any way to defeat or affect the rights and remedies of the Landlord to pursue the full amount.

## Operating Costs

12. In addition to the Base Rent, the Tenant will pay as Additional Rent, without setoff, abatement or deduction, its Proportionate Share of all of the Landlord's costs, charges and expenses of operating, maintaining, repairing, replacing and insuring the Building

Case 24-12610-pmm    Doc 45    Filed 02/13/25    Entered 02/13/25 08:20:18    Desc Main
                Document       Page 4 of 12

*Commercial Lease Agreement*                                                    Page 4 of 12

including the Common Areas and Facilities from time to time and the carrying out of all obligations of the Landlord under this Lease and similar leases with respect to the Building ("Operating Costs").

13. Except as otherwise provided in this Lease, Operating Costs will not include debt service, depreciation, costs determined by the Landlord from time to time to be fairly allocable to the correction of construction faults or initial maladjustments in operating equipment, all management costs not allocable to the actual maintenance, repair or operation of the Building (such as in connection with leasing and rental advertising), work performed in connection with the initial construction of the Building and the Premises and improvements and modernization to the Building subsequent to the date of original construction which are not in the nature of a repair or replacement of an existing component, system or part of the Building.

14. Operating Costs will also not include the following:

    a.   any increase in insurance premiums to the center as a result of business activities of other tenants;

    b.   the costs of any capital replacements;

    c.   the costs incurred or accrued due to the willful act or negligence of the Landlord or anyone acting on behalf of the Landlord;

    d.   structural repairs;

    e.   costs for which the Landlord is reimbursed by insurers or covered by warranties;

    f.   costs incurred for repairs or maintenance for the direct account of a specific tenant or vacant space;

    g.   costs recovered directly from any tenant for separate charges such as heating, ventilating, and air conditioning relating to that tenant's leased premises, and in respect of any act, omission, neglect or default of any tenant of its obligations under its Lease; or

    h.   any expenses incurred as a result of the Landlord generating revenues from common area facilities will be paid from those revenues generated.

15. The Tenant will pay:

    a.   To the Landlord, the Tenant's Proportionate Share of all real property taxes, rates, duties, levies and assessments which are levied, rated, charged, imposed or assessed by any lawful taxing authority (whether federal, state, district, municipal, school or otherwise) against the Building and the land or any part

of the Building and land from time to time or any taxes payable by the Landlord which are charged in lieu of such taxes or in addition to such taxes, but excluding income tax upon the income of the Landlord to the extent that such taxes are not levied in lieu of real property taxes against the Building or upon the Landlord in respect of the Building.

b.    To the lawful taxing authorities, or to the Landlord, as it may direct, as and when the same become due and payable, all taxes, rates, use fees, duties, assessments and other charges that are levied, rated, charged or assessed against or in respect of all improvements, equipment and facilities of the Tenant on or in default by the Tenant and in respect of any business carried on in the Premises or in respect of the use or occupancy of the Premises by the Tenant and every subtenant, licensee, concessionaire or other person doing business on or from the Premises or occupying any portion of the Premises.

## Landlord's Estimate

16.    The Landlord may, in respect of all taxes and Operating Costs and any other items of Additional Rent referred to in this Lease compute bona fide estimates of the amounts which are anticipated to accrue in the next following lease year, calendar year or fiscal year, or portion of such year, as the Landlord may determine is most appropriate for each and of all items of Additional Rent, and the Landlord may provide the Tenant with written notice and a reasonable breakdown of the amount of any such estimate, and the Tenant, following receipt of such written notice of the estimated amount and breakdown will pay to the Landlord such amount, in equal consecutive monthly installments throughout the applicable period with the monthly installment of Base Rent. With respect to any item of Additional Rent which the Landlord has not elected to estimate from time to time, the Tenant will pay to the Landlord the amount of such item of Additional Rent, determined under the applicable provisions of this Lease, immediately upon receipt of an invoice setting out such items of Additional Rent. Within 120 days of the conclusion of each year of the Term or a portion of a year, as the case may be, calendar year or fiscal year, or portion of such year, as the case may be, for which the Landlord has estimated any item of Additional Rent, the Landlord will compute the actual amount of such item of Additional Rent, and make available to the Tenant for examination a statement providing the amount of such item of Additional Rent and the calculation of the Tenant's share of that Additional Rent for such year or portion of such year. If the actual amount of such items of Additional Rent, as set out in the any such statement, exceeds the aggregate amount of the installment paid by the Tenant in respect of such item, the Tenant will pay to the Landlord the amount of excess within 15 days of receipt of any such statement. If the contrary is the case, any such statement will

be accompanied by a refund to the Tenant of any such overpayment without interest, provided that the Landlord may first deduct from such refund any rent which is then in arrears.

## Guarantees

17.  The Guarantor guarantees to the Landlord that the Tenant will comply with the Tenant's obligations under this Lease and agrees to compensate the Landlord in full on demand for all liability resulting from any failure by the Tenant to comply with any of the Tenant's obligations under this Lease.

18.  The Guarantor's obligations remain fully effective even if this Lease is disclaimed, the Landlord gives the Tenant extra time to comply with any obligation, the Landlord previously waives a default of the Tenant under this Lease, or the Landlord does not insist on strict compliance with the Lease's terms.

## Use and Occupation

19.  The Tenant will carry on business under the name of GEORGIA MAES SOUTHERN KITCHEN AND BBQ, and will not change such name without the prior written consent of the Landlord, such consent not to be unreasonably withheld. The Tenant will open the whole of the Premises for business to the public fully fixtured, stocked and staffed on the date of commencement of the Term and throughout the Term, and will continuously occupy and utilize the entire Premises in the active conduct of its business in a reputable manner on such days and during such hours of business as may be determined from time to time by the Landlord.

20.  The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with all statutes, bylaws, rules and regulations of any federal, state, municipal or other competent authority and will not do anything on or in the Premises in contravention of any of them.

21.  The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with any statute, including any subordinate legislation, which is in force now or in the future and taking into account any amendment or re-enactment, or any government department, local authority, other public or competent authority or court of competent jurisdiction and of the insurers in relation to the use, occupation and enjoyment of the Building (including in relation to health and safety compliance with the proper practice recommended by all appropriate authorities).

## Security Deposit

22. On execution of this Lease, the Tenant will pay the Landlord a security deposit equal to the amount of $1,800.00 (the "Security Deposit") to be held by the Landlord without interest. The Landlord will return the Security Deposit to the Tenant at the end of this tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear.

23. The Tenant may not use the Security Deposit as payment for the Rent.

24. Within 30 days after the termination of this tenancy, the Landlord will deliver or mail the Security Deposit less any proper deductions or with further demand for payment to: 509 E Strawberry St, Lancaster, PA 17602, USA, or at such other place as the Tenant may advise.

## Quiet Enjoyment

25. The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold, and enjoy the Premises for the agreed term.

## Distress

26. If and whenever the Tenant is in default in payment of any money, whether hereby expressly reserved or deemed as Rent, or any part of the Rent, the Landlord may, without notice or any form of legal process, enter upon the Premises and seize, remove and sell the Tenant's goods, chattels and equipment from the Premises or seize, remove and sell any goods, chattels and equipment at any place to which the Tenant or any other person may have removed them, in the same manner as if they had remained and been distrained upon the Premises, all notwithstanding any rule of law or equity to the contrary, and the Tenant hereby waives and renounces the benefit of any present or future statute or law limiting or eliminating the Landlord's right of distress.

## Overholding

27. If the Tenant continues to occupy the Premises without the written consent of the Landlord at the expiration or other termination of the Term, then the Tenant will be a tenant at will and will pay to the Landlord, as liquidated damages and not as rent, an amount equal to twice the Base Rent plus any Additional Rent during the period of such occupancy, accruing from day to day and adjusted pro rata accordingly, and subject always to all the other provisions of this Lease insofar as they are applicable to a tenancy at will and a tenancy from month to month or from year to year will not be created by implication of law; provided that nothing in this clause contained will preclude the Landlord from taking action for recovery of possession of the Premises.

## Inspections and Landlord's Right to Enter

28.    During the Term and any renewal of this Lease, the Landlord and its agents may enter the Premises to make inspections or repairs. Except where the Landlord or its agents consider it an emergency, the Landlord will provide the Tenant with written notice 24 hours prior to entering.

## Tenant Improvements

29.    The Tenant will obtain written permission from the Landlord before doing any of the following:

   a.    painting, wallpapering, redecorating or in any way significantly altering the appearance of the Premises;

   b.    removing or adding walls, or performing any structural alterations;

   c.    changing the amount of heat or power normally used on the Premises as well as installing additional electrical wiring or heating units;

   d.    subject to this Lease, placing or exposing or allowing to be placed or exposed anywhere inside or outside the Premises any placard, notice or sign for advertising or any other purpose;

   e.    affixing to or erecting upon or near the Premises any radio or TV antenna or tower, or satellite dish; or

   f.    installing or affixing upon or near the Premises any plant, equipment, machinery or apparatus without the Landlord's prior consent.

## Utilities and Other Costs

30.    The Landlord is responsible for the payment of the following utilities and other charges in relation to the Premises: water and sewer.

31.    The Tenant is responsible for the direct payment of the following utilities and other charges in relation to the Premises: electricity, natural gas, telephone, internet and cable.

## Insurance

32.    The Tenant is hereby advised and understands that the personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss. The Tenant is advised that, if insurance coverage is desired by the Tenant, the Tenant should inquire of Tenant's insurance agent regarding a Tenant's policy of insurance.

33.    Both the Landlord and the Tenant is responsible for insuring the Landlord's contents and furnishings in or about the Premises for either damage or loss for the benefit of the Landlord.

34.     Both the Landlord and the Tenant is responsible for insuring their respective interests and property in the Premises for damage or loss for the benefit of the Tenant and the Landlord. Such insurance should include such risks as fire, theft, vandalism, flood and disaster.

35.     Both the Landlord and the Tenant is responsible for insuring the Premises for liability insurance for the benefit of the Tenant and the Landlord.

36.     The Tenant will provide proof of such insurance to the Landlord upon the issuance or renewal of such insurance.

## Abandonment

37.     If at any time during the Term, the Tenant abandons the Premises or any part of the Premises, the Landlord may, at its option, enter the Premises by any means without being liable for any prosecution for such entering, and without becoming liable to the Tenant for damages or for any payment of any kind whatever, and may, at the Landlord's discretion, as agent for the Tenant, relet the Premises, or any part of the Premises, for the whole or any part of the then unexpired Term, and may receive and collect all rent payable by virtue of such reletting, and, at the Landlord's option, hold the Tenant liable for any difference between the Rent that would have been payable under this Lease during the balance of the unexpired Term, if this Lease had continued in force, and the net rent for such period realized by the Landlord by means of the reletting. If the Landlord's right of reentry is exercised following abandonment of the premises by the Tenant, then the Landlord may consider any personal property belonging to the Tenant and left on the Premises to also have been abandoned, in which case the Landlord may dispose of all such personal property in any manner the Landlord will deem proper and is relieved of all liability for doing so.

## Governing Law

38.     It is the intention of the Parties to this Lease that the tenancy created by this Lease and the performance under this Lease, and all suits and special proceedings under this Lease, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the Commonwealth of Pennsylvania, without regard to the jurisdiction in which any action or special proceeding may be instituted.

## Severability

39.     If there is a conflict between any provision of this Lease and the applicable legislation of the Commonwealth of Pennsylvania (the 'Act'), the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Lease.

## Assignment and Subletting

40. The Tenant will not assign this Lease in whole or in part, nor sublet all or any part of the Premises, nor grant any license or part with possession of the Premises or transfer to any other person in whole or in part or any other right or interest under this Lease (except to a parent, subsidiary or affiliate of the Tenant), without the prior written consent of the Landlord in each instance, which consent will not be unreasonably withheld so long as the proposed assignment or sublease complies with the provisions of this Lease.

41. Notwithstanding any assignment or sublease, the Tenant will remain fully liable on this Lease and will not be released from performing any of the terms, covenants and conditions of this Lease.

42. If the Lease is assigned or if the Premises or any part of the Premises are sublet or occupied by anyone other than the Tenant, the Landlord may collect rent directly from the assignee, subtenant or occupant, and apply the net amount collected, or the necessary portion of that amount, to the rent owing under this Lease.

43. The prohibition against assigning or subletting without the consent required by this Lease will be constructed to include a prohibition against any assignment or sublease by operation of law.

44. The consent by the Landlord to any assignment or sublease will not constitute a waiver of the necessity of such consent to any subsequent assignment or sublease.

## Bulk Sale

45. No bulk sale of goods and assets of the Tenant may take place without first obtaining the written consent of the Landlord, which consent will not be unreasonably withheld so long as the Tenant and the Purchaser are able to provide the Landlord with assurances, in a form satisfactory to the Landlord, that the Tenant's obligations in this Lease will continue to be performed and respected, in the manner satisfactory to the Landlord, after completion of the said bulk sale.

## Additional Provisions

46. Outside area adjacent of building may be use for additional outside eating area.

## Care and Use of Premises

47. The Tenant will promptly notify the Landlord of any damage, or of any situation that may significantly interfere with the normal use of the Premises.

48. Vehicles which the Landlord reasonably considers unsightly, noisy, dangerous, improperly insured, inoperable or unlicensed are not permitted in the Tenant's parking stall(s), and such vehicles may be towed away at the Tenant's expense. Parking facilities

are provided at the Tenant's own risk. The Tenant is required to park in only the space allotted to them.

49.   The Tenant will not make (or allow to be made) any noise or nuisance which, in the reasonable opinion of the Landlord, disturbs the comfort or convenience of other tenants.

50.   The Tenant will not engage in any illegal trade or activity on or about the Premises.

51.   The Landlord and Tenant will comply with standards of health, sanitation, fire, housing and safety as required by law.

## Surrender of Premises

52.   At the expiration of the lease term, the Tenant will quit and surrender the Premises in as good a state and condition as they were at the commencement of this Lease, reasonable use and wear and damages by the elements excepted.

## Hazardous Materials

53.   The Tenant will not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire on the Premises or that might be considered hazardous by any responsible insurance company.

## Rules and Regulations

54.   The Tenant will obey all rules and regulations posted by the Landlord regarding the use and care of the Building, parking lot and other common facilities that are provided for the use of the Tenant in and around the Building on the Premises.

## General Provisions

55.   Any waiver by the Landlord of any failure by the Tenant to perform or observe the provisions of this Lease will not operate as a waiver of the Landlord's rights under this Lease in respect of any subsequent defaults, breaches or nonperformance and will not defeat or affect in any way the Landlord's rights in respect of any subsequent default or breach.

56.   This Lease will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each party to this Lease. All covenants are to be construed as conditions of this Lease.

57.   All sums payable by the Tenant to the Landlord pursuant to any provision of this Lease will be deemed to be Additional Rent and will be recoverable by the Landlord as rental arrears.

58.    Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

59.    Time is of the essence in this Lease.

60.    This Lease will constitute the entire agreement between the Landlord and the Tenant. Any prior understanding or representation of any kind preceding the date of this Lease will not be binding on either party to this Lease except to the extent incorporated in this Lease. In particular, no warranties of the Landlord not expressed in this Lease are to be implied.

**IN WITNESS WHEREOF** the Parties to this Lease have duly affixed their signatures under hand and seal, or by a duly authorized officer under seal, on this 18th day of December, 2024.

(Witness)

Jerry johnson (Landlord)


(Witness)

GEORGIA MAE JOHNSON (Tenant)

Per: _____ (SEAL)